UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HANNAH DAGENAIS,<br>    *Plaintiff*, | )   3:23-cv-241 (SVN)<br>)<br>) |
| v. | )<br>) |
| WAL-MART STORES EAST, LP,<br>    *Defendant*. | )<br>)   November 2, 2023 |

## RULING ON DEFENDANT'S PARTIAL MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

In this diversity action, Plaintiff Hannah Dagenais, a former employee of Defendant Wal-Mart Stores East, LP ("Walmart"), has brought claims under Connecticut state law for sexual harassment, retaliation, and constructive discharge following an alleged sexual assault by a Walmart coworker. ECF No. 1-1. Walmart has moved to dismiss the retaliation and constructive discharge claims on the grounds that Plaintiff was not subject to any adverse employment action. ECF No. 21. In her opposition to Walmart's motion to dismiss, Plaintiff concedes that the constructive discharge claim should be dismissed. ECF No. 31 at 2.

The Court finds that Plaintiff's allegations satisfy the adverse employment action element of her retaliation claim. Walmart's motion to dismiss is therefore DENIED IN PART as to the retaliation claim and GRANTED IN PART on the constructive discharge claim.

**I.    FACTUAL BACKGROUND**

The following facts are taken from Plaintiff's complaint and assumed to be true for purposes of this ruling. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was hired by Walmart in March of 2020 to work at a local Connecticut store. Compl., ECF No. 1-1 ¶¶ 3–4. Plaintiff began as a member of the "clean team" before being transferred two months later to the electronics department. She was then transferred to the

1

automotive department a few months after that, where she remained for about fifteen months until the events in question. *Id.* ¶¶ 4–5.

One afternoon on or around December 22, 2021, Plaintiff was performing the routine task of torquing a tire. *Id.* ¶ 6. When she got up to return the torque stick back to where it was stored, a male co-worker, Kelvin Melendez, groped Plaintiff's breast as he walked by. *Id.* ¶ 7. Plaintiff reported the incident to two co-workers, one of whom called Plaintiff's manager the next day and told her that Melendez had sexually assaulted Plaintiff. *Id.* ¶¶ 9–12. Plaintiff reported the incident herself to management the next day as well, and management indicated that they would launch an investigation but that it would be delayed because of the upcoming holiday. *Id.* ¶ 13.

One week later, a state trooper came to investigate the incident, at Plaintiff's request. *Id.* ¶ 15. In response, management placed Melendez on leave for approximately three weeks while it completed its investigation. *Id.* ¶ 16.

Approximately one month later, Melendez returned to work without advance notice. *Id.* ¶ 17. Later that day, Plaintiff's manager informed her that Melendez would be returning to work. She provided Plaintiff with the choice of either continuing to work alongside Melendez in the automotive department, or transferring to a different department in the same store. *Id.* ¶¶ 20–22. By this time, Plaintiff had been working at Walmart for approximately one and a half years; Melendez had been only working there for about three weeks. *Id.* ¶ 23.

On or about February 12, 2022, Plaintiff resigned in fear of her safety. *Id.* ¶ 26. She has suffered from post-traumatic stress disorder and anxiety as a result of the incident. *Id.* ¶ 27.

II.     **PROCEDURAL BACKGROUND**

Plaintiff exhausted administrative remedies and then initiated this action in state court before it was removed by Walmart on diversity jurisdiction grounds. Plaintiff brings state-law

2

claims for sexual harassment in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(b)(8) (Count One), retaliation in violation of the CFEPA, Conn. Gen. Stat. § 46a-60(b)(8) (Count Two), and constructive discharge in violation of the public policy embodied in Conn. Gen. Stat. § 31-49 (Count Three). Walmart moved to dismiss Counts Two and Three; as Plaintiff concedes that her constructive discharge claim alleged in Count Three should be dismissed, ECF No. 31 at 2, the remaining question is whether her retaliation claim in Count Two is adequately pleaded.

### III.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause

3

of action will not do," *Iqbal*, 556 U.S. at 678.  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

**IV.     DISCUSSION**

The Court holds that Plaintiff has plausibly alleged she was subject to an adverse employment action, so her retaliation claim may proceed.

A. <u>Legal Standard</u>

To state a claim for retaliation under the CFEPA, a plaintiff must demonstrate:  (1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a casual connection between the protected activity and the employment action."  *Phadnis v. Great Expression Dental Ctrs. of Conn., P.C.*, 170 Conn. App. 79, 94–95 (2017).  As the elements of a CFEPA retaliation claim are the same as those of a Title VII retaliation claim, case law interpreting retaliation under Title VII is instructive.  *See Marini v. Costco Wholesale Corp.*, 64 F. Supp. 3d 317, 332 (D. Conn. 2014) (noting that CFEPA retaliation claims are analyzed under the same burden-shifting framework established for Title VII cases).

Walmart's sole argument in support of its motion to dismiss is that Plaintiff has failed to adequately allege an adverse employment action.  In retaliation cases, the standard for an adverse employment action is "less demanding" than in the discrimination context.  *John v. Walmart Store No. 2585*, No. 3:21-cv-1285 (MPS), 2023 WL 2346577, at *8 (D. Conn. Mar. 3, 2023).  The standard is simply "whether the action taken by the employer is 'materially adverse,' meaning 'harmful to the point that [the action] could well dissuade a reasonable worker from making or

4

supporting a charge of discrimination.'"[1] *Id.* (quoting *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010)); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (same); *Muir v. City of Hartford*, No. HHDCV156063640S, 2018 WL 2293072, at *6 (Conn. Super. Ct. Apr. 30, 2018) (collecting cases). Although the standard for assessing whether an action is materially adverse is objective, "context matters." *Hicks*, 593 F.3d at 165 (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 69 (2006) (hereafter, "*White*")). A materially adverse action "is not limited to discriminatory actions that affect the [plaintiff's] terms and conditions of employment" in the strict sense, such as a plaintiff's pay or job responsibilities. *White* 548 U.S. at 64. Rather, "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace." *Id.* at 63 (emphasis removed).

    B. Application

Initially, as Walmart does not challenge any other elements of Plaintiff's retaliation claim, the Court will assume, without deciding, that she has properly alleged she engaged in protected activity by reporting the assault to management; that Walmart knew about the report; and that Walmart allegedly retaliated against her because of her report.

The Court finds that Plaintiff has stated a plausible claim for retaliation. Plaintiff alleges that she was so "terrified" at the thought of working in proximity to the man she accused of sexual assault that she decided to resign. ECF No. 1-1 ¶ 26. She also alleges that she suffered from post-traumatic stress disorder and anxiety as a result of the assault. *Id.* ¶ 27. It is reasonable to infer that, in inviting Melendez back to Plaintiff's department after her report, Walmart's actions could

---

[1] Walmart cites *John* for the proposition that "the standard for establishing constructive discharge is higher than the standard for establishing a hostile work environment." ECF No. 21-1 at 5 (quoting *John*, 2023 WL 2346577 at *7). While true, Walmart ignores that *John* explains a few paragraphs later that for retaliation claims, the adverse action need only be materially adverse. *John*, 2023 WL 2346577, at *8.

"dissuade a reasonable worker from making or supporting" a similar report in the future. *John*, 2023 WL 2346577, at *8 (quoting *Hicks*, 593 F.3d at 165). Walmart's actions placed the burden on Plaintiff to transfer departments should she wish to avoid Melendez. A reasonable worker, observing this response to a credible report of sexual assault, may be dissuaded from making a similar report in the future. Discovery may uncover facts saying otherwise. But for purposes of this motion to dismiss, Plaintiff has plausibly alleged a materially adverse action such that her retaliation claim may proceed.[2]

In its motion to dismiss, Walmart only discusses cases in the constructive discharge context. *See, e.g.*, *Karagozian v. USV Optical, Inc.*, 335 Conn. 426, 430 (2020) (describing how plaintiffs may plead a *prima facie* case of constructive discharge); *Brittel v. Dep't of Corr.*, 247 Conn. 148, 178 (1998) (holding that employer's proposed transfer of plaintiff to a facility away from her alleged assailant did not amount to a constructive discharge). It is only in its reply brief that Walmart addresses the issue of whether allowing an alleged assailant to continue working in proximity with the plaintiff would constitute a materially adverse action. *See* Reply Mem. of Law in Further Supp. of Def.'s Mot. to Dismiss, ECF No. 32 at 2. The Court need not consider arguments raised for the first time in reply. *Conn Bar. Ass'n v. United States*, 620 F.3d 81, 91 n. 13 (2d Cir. 2010). But the Court does not find these three new cases persuasive, in any event.

To start, two of the three cases arise in the summary judgment context, after a full factual record concerning the alleged retaliation was developed. The portion of *Goodwine v. Connecticut*

---

[2] Walmart is correct that Plaintiff cross-references allegations related to her sexual harassment claim in support of her retaliation claim. ECF No. 21-1 at 3 (referencing ECF No. 1-1 at 6). But Walmart provides no reason as to why this is improper, when the allegations are sufficient to show a materially adverse action by Walmart. Plaintiffs often cross-reference portions of their complaint, and here the allegations relate not just to the alleged assault itself, but also to Walmart's decision to allow Melendez to return to work alongside Plaintiff after its investigation. *See, e.g.*, ECF No. 1-1 ¶¶ 21–22 (describing how Plaintiff was given the choice of working in the same department of Melendez or transferring to a different department).

*Department of Children and Families*, No. 3:08cv532 (MRK), 2011 WL 130345 (D. Conn. Jan. 14, 2011), on which Walmart relies considered "adverse action" in the discrimination, rather than retaliation, context. That plaintiff had accused a co-worker of physically assaulting her; after a five-day suspension, he was allowed to return to work. *Id.* at *5. The court considered the plaintiff's deposition testimony, alongside the developed factual record, and concluded that while this was "subjectively bothersome" to the plaintiff, it did not "materially change the conditions of [her] employment" as the plaintiff was not demoted, nor her job responsibilities changed. *Id.* The Court notes that *White* did away with the requirement that the alleged retaliation, as opposed to discrimination, must directly affect the terms and conditions of employment in order to be actionable. *White*, 548 U.S. at 64 ("[T]he antiretaliation provision [of Title VII], unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment."); *Hicks*, 593 F.3d at 163 (remanding case where district court held that the alleged retaliation "did not 'result[] in a meaningful change in the terms and conditions of plaintiffs' employment," because the court did not apply the "unquestionably controlling, Supreme Court decision in [*White*]"). It does not stand to reason, based on *Goodwine*'s holding in the discrimination context, that Plaintiff's allegations here fail to meet the lower standard for "adverse action" in the retaliation context, especially without the benefit of any discovery.

Nor is *Spina v. Our Lady of Mercy Medical Center*, No. 97 Civ. 4661 RCC, 2003 WL 22434143 (S.D.N.Y. Oct. 22, 2003), persuasive. Like *Goodwine*, *Spina* was decided on a motion for summary judgment. *Spina* did, however, involve a similar retaliation claim after the plaintiff had reported sexual harassment by a co-worker on the evening shift. The plaintiff had sought to be transferred to a day shift away from her alleged harasser, but the defendant employer declined. The court concluded that the "refusal to transfer plaintiff to another shift is not a materially adverse

change" because "plaintiff d[id] not allege any differences in pay, benefits, hours, or opportunities for advancement" in the day shift; rather "[t]he only reason plaintiff sought a transfer was to avoid working with [the alleged harasser]." *Id.* at *4. Notably, *Spina* predated *White*, and it is unclear whether *Spina* is still good law following *White*'s holding that a plaintiff need not allege materially adverse changes to her terms and conditions of employment in order to state a retaliation claim.

Walmart's last case, *Kelly v. New York State Office of Mental Health*, 200 F. Supp. 3d 378 (E.D.N.Y. 2016), is the only one decided on a motion to dismiss. There, the plaintiff resigned in response to the employer's handling of her reports of assault by a co-worker. The court found that failing to accommodate her request that she not work alongside her alleged assailant, even in combination with other retaliatory acts like giving her additional work and making petty comments, did not amount to a materially adverse change in the conditions of her employment. *Id.* at 408. *Kelly* is not binding on this Court, and the only in-circuit district court opinion *Kelly* cites for the proposition that requiring an individual to work alongside her purported harasser is not an adverse action is *Goodwine*, which is distinguishable for the reasons mentioned. *Id.* at 406. The Texas district court opinion on which *Kelly* relies does not appear to squarely address the issue of whether returning to work with one's alleged harasser is actionable retaliation. *See E.E.O.C. v. Bass Pro Outdoor World, LLC*, No. 4:11-CV-3425, 2013 WL 1124063, at *6 (S.D. Tex. Mar. 18, 2013) (finding that "close scrutiny, denying days off, failing to alter a schedule, or assigning a heavy workload are not considered adverse actions," but not commenting on the plaintiff's allegation that she "was forced to work with the purported harasser"). For these reasons, Walmart's cases are unpersuasive.

The Court finds it reasonable to infer from Plaintiff's complaint that allowing her alleged assailant to return to work in the same department in which she worked could "dissuade a

reasonable worker from making or supporting" a similar report in the future. *John*, 2023 WL 2346577, at *8 (quoting *Hicks*, 593 F.3d at 165). Thus, Plaintiff may proceed with her retaliation claim in Count Two.

## V. CONCLUSION

For the reasons explained in this Ruling, Walmart's motion to dismiss is DENIED IN PART and GRANTED IN PART. Specifically, it is denied as to Plaintiff's retaliation claim (Count Two) and it is granted as to her common-law constructive discharge claim (Count Three).

**SO ORDERED** at Hartford, Connecticut, this 2nd day of November, 2023.

      */s/ Sarala V. Nagala*
      SARALA V. NAGALA
      UNITED STATES DISTRICT JUDGE