# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HANNAH DAGENAIS, | ) | 3:23-cv-241 (SVN) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WAL-MART STORES EAST, LP, | ) | |
| *Defendant.* | ) | July 23, 2024 |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiff Hannah Dagenais brings this action, removed from state court on diversity grounds, against her former employer, Defendant Wal-Mart Stores East, LP ("Wal-Mart"). Plaintiff resigned from her position as an automotive technician for Wal-Mart after an internal investigation found that her report of sexual harassment against a coworker, Kelvin Melendez, was unsubstantiated, and after Defendant gave *her* the option to transfer to a different department when Melendez returned from suspension, rather than transferring Melendez.

Defendant has moved for summary judgment on Plaintiff's claims for hostile work environment and retaliation, brought under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, *et seq*. For the following reasons, Defendant's motion for summary judgment is GRANTED.

## I.    FACTUAL BACKGROUND[1]

Plaintiff was working as a technician in Wal-Mart's automotive department when, on December 20, 2021, she claims coworker Kelvin Melendez grabbed her breast. Pl.'s L.R. 56(a)2

---

[1] Plaintiff does not dispute any of the facts set forth by Defendant in its Local Rule 56(a)1 Statement. *See* Pl.'s L.R. 56(a)2 St., ECF No. 51-5. The Court therefore only cites to Plaintiff's Local Rule 56(a)2 Statement. Plaintiff does, however, set forth additional facts in a Supplemental Statement. *See* Pl.'s Suppl. St. of Facts, ECF No. 51-5 at 7.

St., ECF No. 51-5, ¶¶ 1–2.  The report was escalated to Wal-Mart's Ethics Hotline on or about December 24, 2021, and a formal investigation began.  *Id.* ¶¶ 2–3.  Plaintiff's Store Manager Michael Lombardi was to collect evidence, and Ethics Case Manager Caroll Cunningham would review the results of Lombardi's investigation.  *Id.* ¶ 3.

As part of the investigation, Plaintiff gave a written statement describing the incident, her reporting of the incident, and other nonconsensual touching by Melendez:

> On Monday, December 20th, 2021, I was putting on the passenger rear tire on a truck at about 3:00-3:30.  When I got up to put the torque stick away Kelvin walks up to me and grabs my left breast without saying a word.  It was completely random and not expected.  After he did that, I was in a lot of shock and immediately walked up to Janeska [Vargas] and told her what happened.  I left work at 4:00 pm.  When I got home I called Kyle [Harelle] to tell him what happened and he immediately called my manager, [Suheily] Baez.  I talked to her and Logan the next day, Tuesday 12/21/21.  Somehow by the end of the night, John Kobis found out what happened and told Kelvin that he was getting fired.  Kelvin walks out to me in the shop and confronts me.  He was denying that it happened.  Kelvin has touched me everyday he's been here but this was definitely the worst.  He has put both hands on my waist, back, or even rubbed my knee at random times of the day.  Kelvin has not touched me since and we also have not talked since this happened.

Pl.'s Ex. 2, Dec. 27, 2021, Dagenais Written St., ECF No. 51-2.  During the investigation, Melendez denied wrongdoing, and was placed on leave on December 27, 2021, pending completion of the investigation.  Pl.'s L.R. 56(a)2 St. ¶¶ 6–7.

Wal-Mart ultimately concluded that Plaintiff's allegations were unsubstantiated.  Pl.'s L.R. 56(a)2 St. ¶ 13.  First, CCTV footage did not conclusively show Melendez walking up to Plaintiff and grabbing her.  *Id.*  Lombardi acknowledged in an email to Cunningham that "[i]t appears there may be contact but it[']s tough to see."  *Id.* ¶ 12.  Second, there were no corroborating witnesses. The only other known coworker present at the time of the incident, Brian Bethea, said he had not witnessed anything inappropriate and did not recall a situation where Melendez grabbed Plaintiff's

breast. *Id.* ¶ 13. Lombardi had also interviewed Janeska Vargas, to whom Plaintiff had spoken after the incident, and Plaintiff's manager Suheily Baez; but neither had witnessed the incident firsthand. *Id.* ¶¶ 5, 13. Vargas expressed that she "was under the impression that it was a joke as we were all laughing including [Plaintiff] and she proceeded to grab another co-worker (Brian) in the same manner she said Kelvin touched her"—though Bethea denied any recollection. *Id.* ¶¶ 10–11.

Melendez was allowed to return to the automotive department, and Plaintiff was given the option of transferring to a different department in the store. *Id.* ¶ 14. Plaintiff did not want to transfer out of the automotive department, however, because she liked working on cars and wanted to "move up" in the car business. Pl.'s Suppl. St. ¶ 6. Plaintiff and Melendez worked together without incident for about two weeks in the automotive department until Plaintiff decided to resign. Pl.'s L.R. 56(a)2 St. ¶ 15. Plaintiff has suffered from anxiety since the December 20, 2021, incident, requiring counseling and medication. Pl.'s Suppl. St. ¶¶ 1–5.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in

dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

### III.    HOSTILE WORK ENVIRONMENT CLAIM

The Court holds that Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

#### A.    Legal Standard

An employee may suffer from discriminatory treatment in violation of Conn. Gen. Stat. § 46a-60, *et seq.*, when he or she is required to work in a hostile environment.  A hostile work environment is one that "is so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [one's] employment were thereby altered." *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (quoting *Alfano v. Costello*, 294 F.3d 365, 373–74 (2d Cir. 2002)).  Hostile environment claims brought under Conn. Gen. Stat. § 46a-60, *et seq.*, are assessed under the same framework as Title VII claims, making federal case law instructive.  *See Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) (citing *Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (2002)).[2]

The Second Circuit applies a totality of circumstances approach to hostile environment claims, considering "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Banks v. General Motors, LLC*, 81 F.4th 242, 262 (2d Cir. 2023) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)) (referred to as the "*Harris* factors").  This test has both objective and subjective components:  "the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Rasmy v. Marriott*

---

[2] Hostile work environment claims, however, are not analyzed under the familiar burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See King v. Aramark Servs. Inc.*, 96 F.4th 546, 559–63 (2d Cir. 2024); *see also Ferrando-Dehtiar v. Anesthesia Grp. of Albany, P.C.*, No. 1:20-cv-01373 (AMN/CFH), 2024 WL 1345345, at *11 (N.D.N.Y. Mar. 29, 2024) (collecting cases).

*Int'l, Inc.*, 952 F.3d 379, 387 (2d Cir. 2020) (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014)).  Under this approach, a hostile work environment may be created "either [by] a single incident [that] was extraordinarily severe, or [] a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [the plaintiff's] working environment."  *Alfano*, 294 F.3d at 374 (cleaned up).  Otherwise stated, the conduct may either be "a singular incident of severe hostility or a pervasive pattern."  *See Banks*, 81 F.4th at 268; *see also Pucino v. Verizon Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) (noting that a plaintiff need not show "her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of those elements, to have altered her working conditions").  The question of whether a work environment is "*sufficiently* hostile" is typically one of fact, and "the interpretation of ambiguous conduct is an issue for the jury."  *Reed v. New York Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012) (emphasis in original) (cleaned up).

Courts must also consider whether the hostile work environment was created by a coworker of the plaintiff when the claim is brought against an employer.  If the hostile work environment is created by a coworker, the employer is liable only for its own negligence.  *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 92 (2d Cir. 2019).  To show an employer's negligence, "a plaintiff must adduce evidence 'that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'"  *Id.* (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013)).  The "reasonableness depends among other things on the gravity of the harassment alleged."  *Torres v. Pisano*, 116 F.3d 625, 638 (2d Cir. 1997) (cleaned up).  Courts consider "whether the response was 'immediate or timely and appropriate in light of the circumstances,

particularly the level of control and legal responsibility [the employer] has with respect to [the employee's] behavior." *Summa*, 708 F.3d at 124 (quoting *Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1111 (8th Cir. 1997)).

      B.  <u>Discussion</u>

Although there is a genuine dispute as to whether Melendez's conduct was severe or pervasive enough to create a hostile work environment, Defendant is entitled to summary judgment because no reasonable jury could find Defendant acted negligently in responding to Plaintiff's complaint.

      *1.  Severity or Pervasiveness*

First, regardless of whether Melendez's conduct is characterized as a single incident of groping or a pattern of unwanted advances, there is sufficient evidence from which a reasonable jury could conclude that Melendez's behavior toward Plaintiff constituted a hostile work environment. A single incident can create a hostile environment if it "work[s] a transformation of the plaintiff's workplace." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (quoting *Alfano*, 294 F.3d at 374). Defendant has identified no case law holding—objectively—that a single incident of intentional groping of a woman's breast in the workplace is not severe enough to create a hostile work environment. The Court recognizes that the Second Circuit has held that a supervisor's touching of a woman's breasts with papers he was holding, even when combined with commentary about the plaintiff's buttocks, is insufficient. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). The touching of an employee's breast with papers, however, is distinguishable from Melendez's conduct here, which Plaintiff reported was intentional touching with his hand—a more serious affront than a brush with papers. That Plaintiff proceeded to work

with Melendez for two weeks after his reinstatement, before her resignation, does not necessarily mean the single groping incident was not objectively transformative of the workplace. Subjectively, Plaintiff testified in her deposition that she was "very uncomfortable and scared" after Melendez was reinstated, as she "didn't know if he was going to touch [her] again, grab [her] in inappropriate spots." Dagenais Dep., ECF No. 51-1 at 21, 72:18–24.  She further testified that she suffered anxiety resulting from the incident, resulting in her having to see a therapist.  *Id.* at 16–17, 67:22–68:3; 68:11-14.

Drawing all inferences in favor of Plaintiff, a reasonable jury could conclude, based on this record, that the single intentional groping incident worked a transformation of Plaintiff's workplace.  *See Reed*, 678 F.3d at 182 (reversing district court's grant of summary judgment to defendant where her supervisor touched her breasts three times and noting that the touching of "intimate parts of an unconsenting employee's body is by its nature severely intrusive and cannot properly be characterized as abuse that is 'minor'").

Similarly, summary judgment would not be warranted if the conduct at issue is characterized as a pattern of unwanted advances.  In addition to the groping incident, Plaintiff adduces evidence that Melendez touched her inappropriately every day since she began working at Wal-Mart on her knees, waist, and back.  This is primarily in the form of her December 20, 2021, written report and her deposition testimony.  *See* ECF No. 51-2 (Plaintiff's written statement describing how Melendez touched her "everyday he's been here but this was definitely the worst"); Dagenais Dep., ECF No. 51-1 at 9, 44:2–7 (describing how Melendez "would rub knee [sic], come up behind me put both of his hands on my waist, little things like that . . . [a]lmost every other day").  Plaintiff testified that Vargas witnessed the other unwanted advances.  Dagenais Dep., ECF No. 51-1 at 8, 43:3–13 (stating Vargas witnessed the touching and "[w]e both thought it was very

weird"). Plaintiff's evidence on this point is not wholly conclusory, as Defendant argues. If a jury were to credit Plaintiff's account of repeated abuse, "it could reasonably find pervasive harassment, even in the absence of specific details about each incident," particularly given Plaintiff's testimony that Vargas witnessed the other incidents. *Torres*, 116 F.3d at 631; *but see Ramos v. Marriott Intern., Inc.*, 134 F. Supp. 2d 328, 349 (S.D.N.Y. 2001) (granting summary judgment when plaintiff did not submit an affidavit or deposition testimony by the coworker she claimed had heard a sexually harassing remark). Of course, Plaintiff "may find it difficult to convince a jury that pervasive harassment in fact took place" because her testimony is fairly general. *Torres*, 116 F.3d at 631. But Plaintiff has nonetheless put forth sufficient evidence on the issue of whether Melendez's conduct was pervasive enough create a hostile environment to survive summary judgment as to this issue.

### 2. *Imputation to Defendant*

Defendant is entitled to summary judgment because there is insufficient evidence that it acted negligently with respect to preventing or responding to the sexual harassment, however. Defendant cannot be liable for Plaintiff's coworker's behavior unless it provided no "reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment, yet failed to take appropriate remedial action." *Bentley*, 935 F.3d at 92 (quoting *Summa*, 708 F.3d at 124). Plaintiff does not argue that Defendant lacked a reasonable avenue for complaint. Nor is there evidence to suggest that Defendant was on notice, or should have been on notice, of Melendez's conduct before Plaintiff reported the December 2021 groping incident. *Id.* at 92–93 (affirming summary judgment when the record evidence showed that defendant-employer only learned of conduct after it was first reported and there was a prompt

investigation).  As a result, Plaintiff must rest on the theory that Defendant's remedial action, once it learned of Melendez's conduct, was inadequate.

Based on the record before the Court, no reasonable jury could conclude that Wal-Mart failed to take appropriate remedial action.  First, it is undisputed that Defendant had an avenue to report the alleged harassment, and that Plaintiff in fact utilized that avenue to file a written complaint about Melendez after the groping incident—"an important consideration."  *See Scoppettone v. Mamma Lombardi's Pizzico, Inc.*, 523 F. App'x 73, 75 (2d Cir. 2013) (summary order) (quoting *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001)).  Second, Wal-Mart's investigators quickly interviewed the relevant parties, watched the security footage, and placed Melendez on interim suspension.  *See Pimentel v. Atrium Hosp., LP*, No. 3:19-CV-1284 (OAW), 2022 WL 4104012, at *5 (D. Conn. Sept. 7, 2022) ("Courts often have granted summary judgment to employers who have demonstrated similar, immediate investigative action upon receipt of a plaintiff employee's complaint of sexual harassment.").  This evidence shows that Defendant did not act negligently in addressing Plaintiff's complaint about Melendez's conduct.

Plaintiff's chief complaint is not with Defendant's investigative process but, rather, with its result:  she disagrees with Defendant's decision that her claim was unsubstantiated and its decision to offer her the opportunity to transfer, rather than moving Melendez from the automotive department so that she could continue in the department that best suited her career aspirations.  But it does not follow from Plaintiff's disagreement with the conclusion of the investigation that Defendant was necessarily negligent in its handling of Plaintiff's complaint.  Rather, after a full investigation, Defendant came to the considered (though undesired, in Plaintiff's view) conclusion that Melendez could return to the automotive department because it could not substantiate Plaintiff's complaint.  Although Plaintiff would have preferred that Defendant ultimately found

that she was indeed groped and that Melendez was transferred, "[a]n employer's remedy need not necessarily expel the harasser from the work environment to be . . . sufficiently calculated to end the harassment." *Dikambi v. City Univ. of New York*, 690 F. Supp. 3d 293, 309 (S.D.N.Y. 2023) (quoting *Stepheny v. Brooklyn Hebrew Sch. for Special Child.*, 356 F. Supp. 2d 248, 266 (E.D.N.Y. 2005)). The law "does not mandate that an employer take any particular remedial action, let alone the plaintiff's preferred remedial action." *Halkitis v. New York City Dep't of Educ.*, No. 19-CV-11753 (JMF), 2022 WL 392911, at *5 (S.D.N.Y. Feb. 9, 2022). If it did, employers may have no choice but to remove an alleged harasser from his or her prior work environment any time a credible, but later unsubstantiated, accusation is made. But, of course, "nothing requires an employer to automatically fire one employee based on another's complaints." *Scoppettone*, 523 F. App'x at 75.

Contrary to Plaintiff's assertions, *Brittell v. Department of Correction*, 247 Conn. 148, 177 (1998), does not suggest that Defendant's decision to offer Plaintiff a transfer, and to reinstate Melendez to the automotive department, was unreasonable. In *Brittell*, the Connecticut Supreme Court held that "relocation of the victim away from the hostile work environment is a reasonable remedial response so long as the victim's transfer, viewed objectively and under all the circumstances, fairly accommodates the legitimate interests and concerns of the victim." *Id.* Although Wal-Mart's response put the burden on Plaintiff to transfer, it did so only after it could not substantiate her claims after a good faith investigation. *Brittell* rejects the idea that, after an inconclusive investigation, it is unreasonable for an employer to put the burden on a plaintiff to transfer departments, even if he or she would prefer to remain in place. *See id.* Plaintiff argues strenuously that the offer for her to move departments did not account for her preference to become a mechanic, but the plaintiff in *Brittell* also preferred to not be moved. This consideration alone

cannot show that Wal-Mart's response was "in any way onerous, punitive, or otherwise unreasonable." *Id.*

Finally, there is no dispute that Defendant's remedial action was successful in preventing the sexual harassment from occurring again. That it did not recur supports Defendant's contention that its remedial action was adequate. *See Van Alstyne v. Ackerly Grp., Inc.*, 8 F. App'x 147, 153 (2d Cir. 2001) (summary order) (affirming grant of summary judgment where company took "immediate and effective corrective action" in response to an employee's complaint); *Small v. Garland*, No. 18-CV-5659 (BCM), 2021 WL 1226979, at *21 (S.D.N.Y. Mar. 31, 2021) (granting summary judgment for defendant where remedial measures successfully prevented further harassment, even where the plaintiff thought that the harasser's punishment was "too light").

Even when all inferences are drawn in favor of Plaintiff, no reasonable trier of fact could conclude, on the record before the Court, that Defendant was negligent in responding to Plaintiff's report of harassment. For this reason, summary judgment is granted in Defendant's favor on Plaintiff's hostile work environment claim.

## IV.   RETALIATION CLAIM

### A.   Legal Standard

The CFEPA prohibits an employer from "discharging, expelling, or otherwise discriminating against, any person because such person has filed a complaint regarding a discriminatory employment practice." *Boucher v. Saint Francis GI Endoscopy, LLC*, 187 Conn. App. 422, 430–31 (2019) (citing Conn. Gen. Stat. § 46a-60(b)(4)), *abrogated on other grounds by Karagozian v. USV Optical, Inc.*, 335 Conn. 426 (2020). Retaliation claims brought under the CFEPA are analyzed under the three-part *McDonnell Douglas* burden-shifting framework. *See King*, 96 F.4th at 565; *Muir v. City of Hartford*, No. HHDCV156063640S, 2018 WL 2293072, at *11–12 (Conn. Super. Ct. Apr. 30, 2018). First, the plaintiff bears the burden of establishing a

*prima case* of retaliation by showing (1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the employment action.  *See Boucher*, 187 Conn. App. at 431; *see also Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).  This initial burden is *de minimis*.  *See Hicks*, 593 F.3d at 164.

Relevant here, the standard for an "adverse employment action" in the retaliation context is whether the action is "materially adverse."  *Id.* at 165; *see also Boucher*, 187 Conn. App. at 431 (citing *Hicks*, 593 F.3d at 165).  An action is "materially adverse" if it is "harmful to the point that [the action] could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Hicks*, 593 F.3d at 165 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).  Although the standard for assessing whether an action is materially adverse is objective, "[c]ontext matters."  *Hicks*, 593 F.3d at 165 (quoting *White*, 548 U.S. at 69).  A materially adverse action "is not limited to discriminatory actions that affect the [plaintiff's] terms and conditions of employment" in the strict sense, such as a plaintiff's pay or job responsibilities.  *White* 548 U.S. at 64.  Rather, "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him [or her] harm outside the workplace."  *Id.* at 63 (emphasis removed).  In the end, the change in conditions must be "more disruptive than a mere inconvenience."  *Boucher*, 187 Conn. App. at 431 (citing *Terry v. Ashcroft*, 336 F.3d 128, 133 (2d Cir. 2003)).

Further, a plaintiff may show a "causal connection" between the protected activity and adverse employment action in his or her *prima facie* case "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through circumstantial

evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *see also Hicks*, 593 F.3d at 170.

After the plaintiff makes a *prima facie* showing of retaliation, the burden shifts to the defendant to "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Hicks*, 593 F.3d at 164 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). If the defendant does so, the burden shifts back to the plaintiff. The plaintiff bears the burden to show that the retaliation was "a 'but-for' cause for the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 349 (2013)). But-for causation "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.*

## B. Discussion

The Court grants summary judgment on Plaintiff's retaliation claim, as there is an absence of evidence upon which a reasonable jury could find that Defendant's reason for allowing Melendez to return to work—that the sexual harassment allegations were unsubstantiated—was a pretext for retaliation against Plaintiff due to her report of sexual harassment.

Regarding Plaintiff's *prima facie* case, Defendant only challenges whether Plaintiff was subjected to an adverse employment action. The Court will assume, without deciding, that she was. The evidence before the Court demonstrates that Plaintiff preferred to remain in the automotive department given her career aspirations. Although reinstating Melendez and offering Plaintiff a transfer was a reasonable decision by Wal-Mart for the reasons described above, it is

possible a jury could still conclude that such a response could "dissuade a reasonable worker from making or supporting" a similar report in the future—a flexible standard.  *See Hicks*, 593 F.3d at 162 (quoting *White*, 548 U.S. at 57).  While subjecting Plaintiff to the choice between pursuing her intended career path and working with her alleged harasser "may make little difference to many workers," the Court recognizes that a reasonable jury might find it "may matter enormously" to individuals like Plaintiff with specific career goals.  *See id.* at 165 (quoting *White*, 548 at 69).

The Court is aware that a sister district court reached a different conclusion in *Goodwine v. Connecticut Department of Children and Families*, No. 3:08-CV-532 (MRK), 2011 WL 130345 (D. Conn. Jan. 14, 2011).  There, the court held that the employer's decision to allow a coworker who physically assaulted the plaintiff to continue working in the same school—though not in the same classroom—as the plaintiff "did not objectively and materially change the conditions of [the plaintiff's] employment," where the assailant "never again did or said anything inappropriate" after his return to the school.  *Id.* at *5, *18.  *Goodwine*, however, is not controlling, and the Court believes it is a close question whether working with one's alleged harasser is a materially adverse change in employment conditions.  In any event, the Court need not decide the issue of whether Plaintiff suffered an adverse employment action because, even assuming she did, her claim fails at step three of the burden-shifting framework, as explained below.

Assuming that Plaintiff has demonstrated a *prima facie* case of retaliation, Defendant has offered a legitimate, non-retaliatory reason for returning Melendez to work in the automotive department:  its investigation did not substantiate Plaintiff's complaint.  The Court therefore moves to an assessment of whether Plaintiff can demonstrate this legitimate, non-retaliatory reason was in fact a pretext for retaliation against her because of her complaint.  It concludes she cannot.

Plaintiff has not put forth any evidence from which a reasonable jury could conclude that Defendant's decision to reinstate Melendez was borne of retaliatory animus.  As noted above, Defendant engaged in a quick and comprehensive investigation of Plaintiff's complaint after she made it.  Following the investigation, Plaintiff's account could not be substantiated; therefore, Defendant made the decision to allow Melendez to return to work in the automotive department. Plaintiff once again takes issue with Defendant's conclusion that her allegations were not substantiated, contending the inconclusiveness of the video—in the face of her allegations— suggests Defendant got it wrong.  But "the fact that an employee disagrees . . . or even has evidence that the decision was objectively incorrect or was based on a faulty investigation, does not automatically demonstrate, by itself, that the employer's proffered reasons are a pretext" for retaliation.  *Rodriguez v. City of N.Y.*, 644 F. Supp. 2d 168, 187 (E.D.N.Y. 2008).

Even assuming *arguendo* that Defendant reached an incorrect conclusion about the validity of Plaintiff's complaint, Plaintiff has put forth no direct or even circumstantial evidence to suggest that Defendant allowed Melendez to return to work *because* Plaintiff complained of harassment. For instance, she has not pointed to "departures from procedural regularity, shifting explanations, or statistics."  *Nicholson v. Bd. of Trs. for the Conn. State Univ. Sys.*, No. 3:08cv1250 (WWE), 2011 WL 4072685, at *8 (D. Conn. Sept. 12, 2011) (citations omitted); *see also Kwan*, 737 F.3d at 846 (noting a plaintiff can prove that retaliation "was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action").  Plaintiff has pointed to the short time frame between Plaintiff's report and Melendez's return to work.  But "[w]hile timing alone may be a basis for establishing a *prima facie* case, it is not enough to establish pretext at the third stage of the *McDonnell Douglas* analysis."  *Yoselovsky v. Associated Press*, 917 F. Supp. 2d

262, 281–82 (S.D.N.Y. 2013) (collecting cases).  Here, Defendant quickly concluded its investigation and then made a decision about how to proceed with Plaintiff's complaint.  But the swift sequence of events does not demonstrate that Defendant was in some way retaliating against Plaintiff because she complained of Melendez's conduct.  At bottom, the question is "what motivated the employer."  *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (cleaned up).  Absent *any* evidence that Defendant sought to retaliate against Plaintiff because she lodged a complaint about Melendez's alleged behavior, no reasonable jury could find in Plaintiff's favor on her retaliation claim.

For these reasons, summary judgment for Defendant is appropriate on Plaintiff's retaliation claim.

## V.       CONCLUSION

For the reasons described above, Defendant's motion for summary judgment is GRANTED.  The Clerk of Court is directed to enter judgment in favor of Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 23rd day of July, 2024.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE